UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-61165-CIV-ZLOCH

UBUY HOLDINGS, INC. f/k/a
E-PAWN.COM, INC., a Nevada
corporation and STEVEN
BAZSULY, individually, and for
and on the behalf of all
shareholders of UBUY HOLDINGS,
INC., f/k/a E-PAWN.COM, INC.,

      Plaintiffs,

vs.

RICHARD GLADSTONE, et al.,

      Defendants.

_____/

```
FILED by _____ D.C.

OCT 1 2 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.
```

**FINAL ORDER OF DISMISSAL**

    THIS MATTER is before the Court upon Defendants Sports Resorts International, Inc. and Donald J. Williamson's Motion To Dismiss Plaintiff's Amended Complaint (DE 157).  The Court has carefully reviewed said Motion and the entire court file and is otherwise fully advised in the premises.

I.  Background

    Plaintiffs Ubuy Holdings, Inc., f/k/a E-Pawn.Com, Inc. and Steven Bazsuly (hereinafter respectively "E-Pawn" and "Bazsuly" and collectively "Plaintiffs") initiated the above-styled cause on June 16, 2003 by filing their first Complaint (DE 1).  Plaintiffs filed an Amended Complaint (DE 31) on November 13, 2003, and subsequently filed the currently operative Corrected Amended Complaint (DE 33) on November 20, 2003.  In their Corrected Amended Complaint, Plaintiffs name sixty-five Defendants and allege the following

causes of action: (1) Federal Securities Fraud in violation of the Securities and Exchange Act of 1934, 15 U.S.C. § 78 (hereinafter the "Exchange Act"), specifically §§ 77z-1, 78i, 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder, 78j-1, 78r, 78t, 78t-1, and S.E.C. Rule 144; (2) State Securities Fraud in violation of Florida Statutes ch. 517.301; (3) Common Law Fraud; (4) Tortuous [sic] Interference With A Business Relationship; (5) Tortuous [sic] Interference With An Economic Relationship; (6) Commercial Bribery; (7) Civil Racketeering in violation of 18 U.S.C. §§ 1962 and 1964; and (8) Negligence.

As the factual basis for these claims, Plaintiffs claim to have been the victims of a "pump and dump" scheme undertaken by Defendants.[1] Specifically, Plaintiffs allege that on September 25, 1996, Defendants Leslie S. Greyling and Anne M. E. Greyling (hereinafter collectively the "Greylings") acquired a shell company known as Wasatch International Corporation (hereinafter "Wasatch"). During the period of time between September 1996 and February 2000, the Greylings, along with Defendants Richard Gladstone and Laurie Doll Gladstone (hereinafter the "Gladstones"), pre-positioned shares of Wasatch stock with certain Defendants and others who are not parties to this action. In January 2000, the Greylings and Gladstones caused Wasatch to acquire E-Pawn, which was owned and

---

[1] All facts are taken from Plaintiffs' Corrected Amended Complaint unless otherwise indicated.

2

controlled by Bazsuly.  This merger was completed on March 14, 2000.  At that time, Wasatch changed its name to E-Pawn and the company's stock was trading for one cent per share.

Plaintiffs allege that subsequent to the aforementioned merger, Defendants utilized various illegal means to create a market for E-Pawn stock thereby artificially inflating the price thereof.  Among the means allegedly employed by Defendants were bribing brokers, enriching market makers at brokerage firms through undisclosed special deals, publishing false press releases and e-mails, and utilizing internet bulletin boards and chat rooms. Through these means, Defendants allegedly drove up the market price of E-Pawn stock from one cent per share to over $9.00 per share. This "pump" portion of the scheme was followed by the "dump" stage, wherein Defendants allegedly began selling their pre-positioned E-Pawn shares and realizing large profits.  As a result of this alleged conduct, Plaintiffs claim to have suffered monetary loss.

The Court notes that in the instant Motion (DE 57), Defendants Sports Resorts International, Inc. and Donald J. Williamson move to dismiss the Corrected Amended Complaint (DE 33) pursuant to Federal Rule of Civil Procedure 12(b)(6).  In support thereof, the instant Motion states that Plaintiffs' federal securities claims are time barred, that Plaintiffs fail to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9 and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, and

that Plaintiffs fail to allege a claim under the Racketeering
Influence and Corrupt Organization Act, 18 U.S.C. § 1961, et seq.
(hereinafter "RICO") or state law claims.   Plaintiffs oppose
granting the instant Motion (DE 57) and argue that they stated
claims under the aforementioned statutes and common law theories
and that their federal securities claims are not time barred
because they were prevented from discovering the full nature of the
alleged fraud until recently.  The Court further notes that Motions
To Dismiss have been filed by numerous Defendants, and that all of
these motions rely on largely similar grounds in moving for
dismissal.  See DE Nos. 59, 60, 61, 62, 89, 131 and 134.

## II.  Discussion

### A.  Motion To Dismiss Standard

Only a generalized statement of facts needs to be set out to
comply with the liberal pleading requirements of Federal Rule of
Civil Procedure 8.  A classic formulation of the test often applied
to determine the sufficiency of the Complaint was set out by the
United States Supreme Court in Conley v. Gibson, 355 U.S. 41, 45-46
(1957), wherein the Court stated:

> . . . In appraising the sufficiency of the
> Complaint we follow . . . the accepted rule
> that a Complaint should not be dismissed for
> failure to state a claim unless it appears
> beyond doubt that the plaintiff can prove no
> set of facts in support of his claim which
> would entitle him to relief.

Upon a motion to dismiss pursuant to Federal Rule of Civil

4

Procedure 12(b)(6), "[t]he plaintiff's factual allegations are accepted as true." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003) (citation omitted). The Court notes, however, that "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." Id.

While the normal focus of a district court at the dismissal stage is a plaintiff's complaint, there are circumstances where the court may consider other documents. Specifically, "when considering a motion to dismiss in a securities fraud case, [a court] may take judicial notice (for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents) of relevant public documents required to be filed with the SEC, and actually filed." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999). A district court may also take judicial notice of public records. Watson v. Bally Mfg. Corp., 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993), aff'd 84 F.3d 438 (11th Cir. 1996); see also Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993) (statements published in the Federal Register are public record and may be considered at dismissal stage). Finally, the Court notes that, in accordance with Local Rule 12.1 of the United States District Court for the Southern District of Florida, Plaintiffs filed a Civil RICO Case Statement (DE 6) which they incorporated by

reference into their Corrected Amended Complaint. See DE 33, ¶ 91.

B. Whether Claims Are Time Barred

The Court notes that an action alleging liability under the Exchange Act must be brought "within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e); see Theoharous v. Fong, 256 F.3d 1219, 1228 (11th Cir. 2001) (dismissing federal securities class action when brought more than one year after the plaintiffs were put on notice about the possibility of securities law violations); Freundt-Alberti v. Merrill, Lynch, Pierce Fenner & Smith, Inc., 135 F. Supp. 2d 1298, 1302 (S.D. Fla. 2001) (finding federal securities claims brought more than one year after the plaintiffs should have discovered fraud through due diligence barred by statute of limitations), aff'd 31 Fed. Appx. 930 (11th Cir. 2002).

The Court notes that for the purpose of § 78i(e), discovery of a violation of the Exchange Act "occurs when a potential plaintiff has inquiry or actual notice of a violation." Theoharous, 256 F.3d at 1228 (citing Kauther SDN BHD v. Sternberg, 149 F.3d 659, 670 (7th Cir. 1998)). The Court further notes that "[i]nquiry notice is the term used for knowledge of facts that would lead a reasonable person to begin investigating the possibility that his legal rights had been infringed." Id. (internal citation omitted). Courts have found varied factual scenarios to act as "storm

6

warnings" of fraud that place a potential plaintiff on inquiry notice and "trigger a . . . duty to investigate in a reasonably diligent manner." <u>Freundt-Alberti</u>, 135 F. Supp. at 1301 (<u>citing Maggio v. Gerard Freezer & Ice Co.</u>, 824 F.2d 123, 128 (1st Cir. 1987)); <u>see also</u> <u>Theoharous</u>, 256 F.3d at 1228 (finding that a company's filing for bankruptcy, and statements that it had substantial cashflow and financial deficiencies and was temporarily closing manufacturing facilities provided plaintiffs with inquiry notice that previous assurances of financial health were fraudulent); <u>De La Fuente v. DCI Telecommunications, Inc.</u>, 206 F.R.D. 369, 382 (S.D.N.Y. 2002) (finding that a ten day suspension in trading of defendant's stock due to suspicious accounting irregularities was plaintiff's biggest indication of the probability of fraud); <u>Freundt-Alberti</u>, 135 F. Supp. at 1301 (finding that defendants' investment of plaintiffs' assets in stocks instead of bonds and failure to mail account statements, both in violation of plaintiffs' investing instructions, acted as "more than sufficient" storm warnings).

Because Plaintiffs initiated the above-styled cause on June 16, 2003, their federal securities claims are time barred if they discovered facts prior to June 16, 2002 that would lead a reasonable person to begin investigating the possibility of a violation. Plaintiffs allege that Defendants engaged in wrongdoing between September 25, 1996 and June 14, 2000, with most of the

7

illegal activity occurring between January 1, 2000 and June 14, 2000. Plaintiffs further allege that "most of the illegal activities [were] hidden" from them until January 2003, at which point relevant documents that were the focus of a federal grand jury investigation in the Southern District of New York were unsealed and became part of the public record. See DE 33, § 79. The Court notes, however, that the focus of its inquiry in determining whether Plaintiffs' federal securities claims are time barred is not the moment when "most of the illegal activity" that made up the alleged conspiracy was revealed to Plaintiffs. See Freundt-Alberti, 135 F. Supp. at 1301 (quoting Kennedy v. Josephthal & Co., 814 F.2d 798, 802 (1st. Cir. 1987) ("Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself.")). Rather, the Court must determine the time at which Plaintiffs knew of facts that would lead a reasonable person to investigate the possibility of fraud.

To that end, the Court notes that on June 14, 2000, the Securities and Exchange Commission (hereinafter the "SEC") issued an Order Of Suspension Of Trading suspending trading of E-Pawn stock from that day through June 27, 2000. See 65 Fed. Reg. 38,010 (June 19, 2000). The SEC suspended trading of E-Pawn stock because of statements the company made regarding the identity of persons in control of E-Pawn, and because the SEC believed that "recent market activity in E-Pawn securities may be the result of manipulative

conduct or other illegal activity." Id.  The Court further notes that on June 30, 2000, E-Pawn, whose Chief Executive Officer at the time was Bazsuly, filed an 8-K Form with the SEC as is required under §§ 13 or 15(d) of the Exchange Act.  See DE 57, Ex. 3.  In that 8-K Form, E-Pawn stated that it "has reason to believe that it has been damaged by fraud, fraud on the market, breach of fiduciary duty, negligence, civil RICO, and conspiracy to commit these illegal acts among other things."  Id., p. 8.  E-Pawn further stated that those responsible for these acts included, but were not limited to, Jeffrey Pokross and DMN Capital Investments, Inc.  Id.  Both of these parties are named Defendants in the above-styled cause.

The Court finds that the SEC's Order Of Suspension Of Trading issued on June 14, 2000 put Plaintiffs on inquiry notice and provided sufficient grounds to trigger Plaintiffs' duty to investigate the possibility of fraud.  Of particular importance to this finding is the fact that in suspending trading of E-Pawn stock, the SEC specifically cited suspicion of market manipulation as one of its bases.  Plaintiffs' Corrected Amended Complaint (DE 33) is rife with allegations of fraudulent market manipulation, see, e.g., DE 33, ¶¶ 3, 13, 14, 25, 60, and the Court finds that the SEC informed Plaintiffs of the possibility of these wrongdoings more than three years before Plaintiffs initiated the above-styled cause.  If there was any doubt that the SEC provided Plaintiffs

9

with such inquiry notice, E-Pawn's statements in its June 30, 2000 8-K Form that it believed itself to be the victim of fraud at the hands of the some of the Defendants in this case establish that Plaintiffs were on inquiry notice as to the possibility of fraud. Since the record indicates that Plaintiffs had inquiry notice of the possibility of securities fraud by June 30, 2000 at the latest, the Court finds that Plaintiffs' claims for federal securities fraud, filed on June 16, 2003, are time barred under 15 U.S.C. § 78i(e). Accordingly, Plaintiffs first cause of action, titled Federal Securities Fraud, shall be dismissed.

C. <u>Whether Plaintiffs State A RICO Claim</u>

In order to state a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>Durham v. Business Mgmt. Assocs.</u>, 847 F.2d 1505, 1511 (11th Cir. 1988) (<u>quoting</u> <u>Sedima S.P.R.L. v. Imprex Co.</u>, 473 U.S. 479 (1985)). The Court notes the particular importance courts have placed on alleging a pattern of racketeering activity. <u>See</u> <u>Jackson v. Bellsouth Telecommunications</u>, 372 F.3d 1250, 1264 (11th Cir. 2004). In alleging such a pattern, a plaintiff must charge that "(1) the defendants committed two or more predicate acts within a ten year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." <u>Id.</u> (citations omitted).

The third element is of importance because "RICO targets

10

*ongoing* criminal activity, rather than sporadic, isolated criminal acts." <u>Id.</u> (emphasis in original). *In* determining whether alleged unlawful action has this required continuity, the United States Supreme Court held that such continuity may be "closed" or "open ended." <u>H.J., Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 241 (1989). If a plaintiff relies on closed period continuity, that plaintiff must allege "a series of related predicates extending over a substantial period of time." <u>Id.</u> at 242. If relying instead on open ended continuity, a plaintiff must allege "either that 'the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,' or that 'the predicate acts or offenses are part of an ongoing entity's regular way of doing business.'" <u>Jackson</u>, 372 F.3d at 1265 (<u>quoting</u> <u>H.J., Inc.</u>, 492 U.S. at 242).

For the sake of analyzing whether Plaintiffs properly alleged the continuity element of a pattern of racketeering activity, the Court takes as true Plaintiffs' allegations that Defendants are an enterprise and that the alleged unlawful conduct constitutes predicate acts for RICO purposes. <u>See</u> DE 6, p. 28. Turning first to closed period continuity, the Court notes that Plaintiffs allege that the conspiracy among Defendants commenced on September 25, 1996 and continued through June 14, 2000 with most of the illegal activity occurring between January 1, 2000 and June 14, 2000. The longest period of time, therefore, that the predicate acts can be

11

considered to have been ongoing is approximately three years and nine months.

In determining whether three years and nine months constitutes a substantial period of time, the Court notes that "no court has unequivocally declared a minimum period of time that can be considered substantial." Id., at 1266 (finding nine months likely "a wholly insufficient interlude"). The Court further notes, however, that "where the RICO allegations concern only a single scheme with a discrete goal . . . courts have refused to find a closed-ended pattern of racketeering even when the scheme took place over longer periods of time." Id. at 1267.

Plaintiffs allege that "[t]his case arises from a 'Pump and Dump' scheme involving E-PAWN common stock." DE 6, p. 2. The scheme is further described as centering "around the promotion and sale of pre-positioned E-PAWN common stock which had been pre-positioned by various of the [sic] Defendants in the period from 1996 through February 28, 2000 and only awaited the proper acquisition target to become identified and the scheme culminated." DE 6, p. 28. The Court finds these descriptions of Defendants' alleged scheme to be descriptions of "a single scheme with a discrete goal." If Plaintiffs' allegations are taken as true, Defendants' conduct does not enable them to engage in ongoing "pump and dump" schemes as part of a racketeering pattern. To undertake another such scheme would require Defendants to begin their efforts

12

anew starting with the acquisition of a shell company and pre-positioning of shares.  This type of isolated criminal conduct is not a proper target of RICO, and accordingly, the Court finds that Plaintiffs have not alleged closed period continuity.

In considering open ended continuity, the Court notes again that the scheme alleged by Plaintiffs is by its very nature a singular event.  Since Plaintiffs do not allege a "threat of repetition" or that there is an "ongoing entity" that has this conduct as its "regular way of doing business," they have not alleged open ended continuity.  The Court therefore finds that Plaintiffs failed to allege that Defendants' conduct exhibited continuity, and have therefore failed to allege that Defendants engaged in a pattern of racketeering activity.  Accordingly, the Court finds, taking as true the allegations of the Corrected Amended Complaint (DE 33), that Plaintiffs fail to state a RICO claim and Plaintiffs' seventh cause of action, titled Civil Racketeering, shall be dismissed.

D.  <u>Plaintiffs' State Law Claims</u>

In addition to the aforementioned Federal Securities Fraud and Civil Racketeering claims, Plaintiffs allege six state law claims. As a threshold matter, the Court notes that it has original jurisdiction over Plaintiffs' Federal Securities Fraud and Civil Racketeering claims pursuant to 28 U.S.C. § 1331.  As the result of its original jurisdiction over these claims, the Court may exercise

13

supplemental jurisdiction over Plaintiffs' state law claims
pursuant to 28 U.S.C. § 1367(a).   § 1367(a) provides that a
"district court shall have supplemental jurisdiction over all other
claims that are so related to claims in the action within . . .
[the court's] original jurisdiction that they form part of the same
case or controversy."   The Court further notes, however, that
pursuant to 28 U.S.C. § 1367(c), it may decline to exercise
supplemental jurisdiction if it dismisses all claims over which it
has original jurisdiction.  In fact, "dismissal of state law claims
[is] strongly encouraged when federal law claims are dismissed
prior to trial."  Bagget v. First Nat'l Bank, 117 F.3d 1342, 1353
(11th Cir. 1997) (citing United Mine Workers v. Gibbs, 383 U.S.
715, 726 (1966) ("Certainly, if the federal claims are dismissed
before trial, even though not insubstantial in a jurisdictional
sense, the state claims should be dismissed as well")).
Accordingly, the Court declines to exercise jurisdiction over
Plaintiffs' state law claims and Plaintiffs' remaining cause of
action shall be dismissed.

III.  Conclusion

Upon review of the record herein, the Court finds that
Plaintiffs' claim for Federal Securities Fraud is time barred under
15 U.S.C. § 78i(e) because it was filed more than one year after
Plaintiffs were put on inquiry notice regarding the possibility of
fraud.  The Court further finds that Plaintiffs failed to state a

14

RICO claim because, even when taking Plaintiffs' allegations as true, there is no claim that Defendants' conduct amounted to a pattern of racketeering activity. Finally, because Plaintiffs fail to state a cognizable federal claim, the Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims.

Accordingly, and after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1.  Defendants Sports Resorts International, Inc. and Donald J. Williamson's Motion To Dismiss Plaintiff's Amended Complaint (DE 157) be and the same is hereby **GRANTED** and the above-styled cause be and the same is hereby **DISMISSED;** and

2.  To the extent not otherwise disposed of herein, all pending motions be and the same are hereby **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___15th___ day of__OCTOBER__, 2004.

_____
WILLIAM J. ZLOCH
Chief United States District Judge


Copies furnished:

All counsel of record

15